# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS
## WESTERN DIVISION

|  |  |
|---|---|
| Young Americans for Liberty at University of Massachusetts, Amherst; and Nicholas Consolini, <br><br> Plaintiffs, <br><br> v. <br><br> Robert J. Manning, R. Norman Peters, James R. Buonomo, Mary L. Burns, Derek J. Dunlea, Robert Epstein, David G. Fubini, Maria D. Furman, Stephen R. Karam, Gray R. Milkowski Michael V. O'Brien, Kerri E. Osterhaus-Houle, Imari K. Paris Jeffries, James A. Peyser, Malinda E. Reed, Samantha E. Reid, Elizabeth D. Scheibel, Henry M. Thomas III, Steven A. Tolman, Victor Woolridge, Charles F. Wu, and Camilla D. Yu, each in their individual capacity and in their official capacities as members of the Board of Trustees of the University of Massachusetts; Marty Meehan, individually and in his official capacity as President of the University of Massachusetts; Kumble R. Subbaswamy, individually and in his official capacity as Chancellor, University of Massachusetts Amherst; and Enku Gelaye, individually and in her official capacity as Vice Chancellor for Student Affairs and Campus Life, University of Massachusetts Amherst, <br><br> Defendants. | Case No. <br><br><br> **Verified Complaint for Declaratory and Injunctive Relief** <br><br> **Jury Trial Demanded** |

## INTRODUCTION

1.      Public colleges, far from being immune to the obligations of the First Amendment,

are supposed to be "the marketplace of ideas," where students can freely exchange ideas with one

another, learning how to respectfully debate and dialogue with those whose views differ from their own.

2.      The marketplace is not free, however, when broad categories of student speech are limited to a single hour per day in a single location chosen by the administration.

3.      UMass bans "speeches and rallies" on campus unless they take place between noon and 1:00 pm in a limited area in front of the Student Union Building.

4.      If a student engages in expression anywhere else on campus during any other time and the University deems it to be a "speech" or "rally" the student faces sanctions up to and including expulsion.

5.      In addition, individual students do not qualify to reserve space on campus; thus, the only option for an individual student to give a speech or to rally is during the limited time permitted in the small speech zone.

6.      The University does not define "speeches and rallies" and therefore reserves to itself the discretion to determine when expression becomes a "speech" or a "rally" and when it does not.

7.      This unreasonable and vague policy violates the First and Fourteenth Amendment rights of students to free speech and due process.

8.      Plaintiffs bring this action to vindicate their rights under the First and Fourteenth Amendments to the United States Constitution.

## JURISDICTION AND VENUE

9.      This action raises federal questions under the United States Constitution, particularly the First and Fourteenth Amendments, and 42 U.S.C. §§ 1983 *et seq*.

10.     This court has jurisdiction over the federal claims under 28 U.S.C. §§ 1331 and 1343.

11.     This Court has jurisdiction to award the requested declaratory relief under 28 U.S.C. §§ 2201-02 and Federal Rule of Civil Procedure 57.

12.     This Court has jurisdiction to award the requested injunctive relief under 28 U.S.C. § 1343 and Federal Rule of Civil Procedure 65.

13.     This Court has authority to award the requested damages pursuant to 28 U.S.C. § 1343.

14.     This Court has jurisdiction to award reasonable costs and attorneys' fees under 42 U.S.C. § 1988.

15.     Venue is proper in this district under 28 U.S.C. § 1391(b) because the Defendants reside in this district and/or the acts described in this Complaint occurred in this district.

## PLAINTIFFS

16.     Plaintiff Young Americans for Liberty at University of Massachusetts, Amherst ("YAL") is an unincorporated expressive association comprised of University of Massachusetts ("UMass" or "the University") students.

17.     YAL is a non-partisan, student-led organization.

18.     Part of YAL's mission is to be an expressive association at UMass.

19.     YAL at UMass is affiliated with a national organization of the same name, referenced in this Complaint as YAL National.

20.     YAL National is a non-partisan organization with chapters at public and private universities throughout the country.

21.     Like its national organization, YAL's mission is to identify, educate, train, and mobilize students to promote the principles of the natural rights of life, liberty, and property.

22.     Plaintiff Nicholas Consolini is a student at UMass.

23.     YAL and Mr. Consolini desire to communicate on campus through a variety of means, including by organizing and participating in speeches and rallies.

## **DEFENDANTS**

24.     Defendants, Robert J. Manning, R. Norman Peters, James R. Buonomo, Mary L. Burns, Derek J. Dunlea, Robert Epstein, David G. Fubini, Maria D. Furman, Stephen R. Karam, Gray R. Milkowski, Michael V. O'Brien, Kerri E. Osterhaus-Houle, Imari K. Paris Jeffries, James A. Peyser, Malinda E. Reed, Samantha E. Reid, Elizabeth D. Scheibel, Henry M. Thomas III, Steven A. Tolman, Victor Woolridge, Charles F. Wu, and Camilla D. Yu, (collectively, "the Board" or "Trustee Defendants") are members of the Board of Trustees of the University of Massachusetts.

25.     The Board is authorized by state law to establish policy for UMass.

26.     The Board enacts the policies that govern the University, including the Speech Zone Policy challenged in this action.

27.     Each of the Trustee Defendants is responsible for enactment, amendment, and repeal of Board of Trustees' policies, including the Speech Zone Policy challenged herein, and its application to students in restricting their ability to speak freely on campus.

28.     The Trustee Defendants have not modified the policies governing student expression on campus, including the Speech Zone Policy challenged herein, to comply with constitutional mandates.

29.     Each of the Trustee Defendants is sued in his or her official capacity for injunctive and declaratory relief and in his or her individual capacity for damages resulting from the Speech Zone Policy.

30.     Defendant Marty Meehan, is the President of the University of Massachusetts.

31.     Defendant Meehan is the chief executive officer of the University.

32.     Defendant Meehan is responsible for enforcement of Board of Trustees' policies, including the Speech Zone Policy challenged herein, and its application to students in restricting their ability to speak freely on campus.

33.     Defendant Meehan is responsible for developing "University standards" that implement and enforce Board policies.

34.     Defendant Meehan has supervisory authority or control over officials charged with enforcement of the Speech Zone Policy.

35.     Defendant Meehan has not instructed UMass personnel, including the other defendants, to change or alter the Speech Zone Policies challenged herein to comply with constitutional mandates.

36.     Defendant Meehan is sued in his official capacity for injunctive and declaratory relief and in his individual capacity for damages resulting from the Speech Zone Policy.

37.     Defendant Kumble R. Subbaswamy is the Chancellor of the University of Massachusetts, Amherst.

38.     Defendant Subbaswamy is responsible for enforcement of Board of Trustees' policies, including the Speech Zone Policy challenged herein, and its application to students in restricting their ability to speak freely on campus.

39.     Defendant Subbaswamy has supervisory authority or control over officials charged with enforcement of the Speech Zone Policy.

40.     Defendant Subbaswamy has not instructed UMass personnel, including the other defendants, to change or alter the Speech Zone Policies challenged herein to comply with constitutional mandates.

41.     Defendant Subbaswamy is sued in his official capacity for injunctive and declaratory relief and in his individual capacity for damages resulting from the Speech Zone Policy.

42.     Defendant Enku Gelaye is the Vice Chancellor for Student Affairs and Campus Life at the University.

43.     Defendant Enku Gelaye is responsible for enforcement of Board of Trustees' policies, including the Speech Zone Policy challenged herein, and its application to students in restricting their ability to speak freely on campus.

44.     Defendant Enku Gelaye has supervisory authority or control over officials charged with enforcement of the Speech Zone Policy.

45.     Defendant Enku Gelaye has not instructed UMass personnel to change or alter the Speech Zone Policies challenged herein to comply with constitutional mandates.

46.     Defendant Defendant Enku Gelaye is sued in her official capacity for injunctive and declaratory relief and in her individual capacity for damages resulting from the Speech Zone Policy.

## **STATEMENT OF FACTS**

47.     University of Massachusetts is a public university organized and existing under the laws of the Commonwealth of Massachusetts.

48.     The University's five campuses average a total enrollment of over 70,000 students.

49.     The events giving rise to this complaint occurred at the Amherst Campus ("UMass").

50.     UMass has an annual enrollment of approximately 30,000 students.

51.     The UMass campus is over 1,400 acres.

52.     The UMass campus is composed of various publicly-accessible buildings and outdoor areas, including public streets, sidewalks, open-air quadrangles, and parks.

53.     The outdoor areas of UMass are open to the public and there are no gates or barriers to pedestrian entry.

54.     The Campus is maintained like a park with large cultivated grass areas, water features, trees, benches, and sidewalks.

55.     The College's 1,400 acre campus has many suitable streets, sidewalks, open-air quadrangles, parks, and open spaces where speeches or rallies will not interfere with or disturb the College's educational environment or access to buildings and sidewalks.

**Defendants' Speech Zone Policy and its Chilling Effect on Plaintiffs' Speech**

56.     UMass Policy T90-079, Regulations for Use of Property University of Massachusetts at Amherst (herein, the "Speech Zone Policy"), is a policy regulating the use of property at UMass and was adopted by the Board of Trustees under the authority of Massachusetts General Laws Chapter 75. (UMass Policy T90-079 attached as Exhibit 1).

57.     The Speech Zone Policy states that "[o]utdoor speeches and rallies during class hours may be held only on the –west (sic) side (main entrance) of the Student Union Building, and shall be limited to one (1) hour in length, from noon to 1:00 P.M."

58.     This speech zone area comprises less than 1% of the campus. (UMass Campus Map attached as Exhibit 2).

59.     The Speech Zone Policy does not define "speeches."

60.     The Speech Zone Policy does not define "rallies."

61.     The Speech Zone Policy does not define "class hours."

62.     On information and belief, classes are normally held on campus every day of the week during non-holidays, including weekends, and may take place between, but not limited to, the hours of 8 am and 10 pm.

63.     Defendants, the President, Chancellor, and Vice Chancellor, ("Individual Defendants") are charged with enforcing the Speech Zone Policy.

64.     On information and belief Individual Defendants do enforce the Speech Zone Policy.

65.     Any "unauthorized presence in or use of University premises, facilities or property" constitutes a violation of the UMass Code of Student Conduct.

66.     Penalties for violations of the Code of Student Conduct range from a "warning" to expulsion from the university.

67.     Thus, delivering a speech, inviting a speaker, or holding or participating in a rally outside of the designated zone or during hours other than between noon and 1:00 pm may result in sanctions up to and including expulsion from the University.

68.     UMass Policy T90-079 only permits university-units (which does not include students) or registered student organizations to reserve space for speeches and does not permit individual students to reserve meeting space.

69.     Mr. Consolini desires to be able to give speeches and to rally in his individual capacity on topics that may differ from speeches or rallies hosted by YAL.

70.     But, Mr. Consolini's only option to deliver a speech or to rally students in his capacity as an individual student is to speak or rally only between noon and 1:00 pm in front of the Student Union Building because he is unable to reserve any other meeting space as an individual.

71.     On information and belief, delivering a speech or holding a rally in a publicly accessible outdoor location on campus, as opposed to a reserved classroom, will often increase the exposure of the event and the opportunity for other students passing by to hear the expression.

72.     Some students are better reached, and some speeches and rallies would be more effective, if held in places other than the speech zone between noon and 1:00 pm.

73.     Plaintiffs, YAL and Mr. Consolini separately desire to host and present speeches and to hold and participate in rallies in other publicly accessible open areas of campus besides the speech zone, and at times outside the noon to 1:00 pm time.

74.     Mr. Consolini, on behalf of himself and YAL has purchased materials in excess of $20 to assist in giving speeches and rallying students, but is unable to use the materials outside of the Speech Zone and limited time.

75.     Plaintiffs are unable to hold speeches and rallies outside the zone and specified hours and their speech is burdened because of the Speech Zone Policy.

76.     Defendants' Speech Zone Policy chills Plaintiffs' speech.

77.     Plaintiffs are currently refraining from engaging in expressive activities on campus outside the designated zone and/or hours because they do not know what defendants may deem to be a speech or rally and fear sanction from UMass.

78.     If the Speech Zone Policy was lifted, Plaintiffs would engage in expressive activities, including speeches and/or rallies outside the speech zone and during different hours.

79.     Limiting speeches or rallies to noon to 1:00 pm and only in the single location in front of the Student Union Building prohibits and chills speech outside of those limits and limits the effectiveness of speeches and rallies because it limits the audience.

80.     Defendants' Speech Zone Policy burdens Plaintiffs' speech by limiting it to less than 1% of campus, during only seven potential hours per week, and chilling Plaintiffs' speech through the use of vague and undefined terms.

81.     Because it does not define "speeches," "rallies," or "class hours" the Speech Zone Policy grants unbridled discretion to Defendants, specifically Defendant Gelaye whose decisions are subject to oversight and review by other Defendants, to determine what expression does or does not constitute a "speech" or "rally" and what hours are or are not included in the ban on speeches and rallies during "class hours."

82.     Because it does not define "speeches" "rallies," or "class hours" the Speech Zone Policy grants unbridled discretion to Defendants, specifically Defendant Gelaye whose decisions are subject to oversight and review by other Defendants, to permit some expression outside the zone and time based on its viewpoint by not deeming it a speech or rally, but to prohibit and sanction similarly situated expression based on its viewpoint by deeming it to be a speech or rally.

83.     Because speeches on campus are banned unless they comply with the Speech Zone Policy, and because individual students are not permitted to reserve space for speeches, Mr. Consolini is banned from giving any speech outside the limited time and location permitted by the Speech Zone Policy.

84.     Mr. Consolini, in his individual student capacity, desires to be able to engage in expression that could be deemed a speech or rally at times other than noon to 1:00 pm but the Speech Zone Policy bans him from doing so and thus burdens his expression.

85.     Speaking or rallying only during the limited hours and in the limited location is not as effective a form of communication as speaking during other times and at other locations on campus.

86.     Defendants have been repeatedly warned that the Speech Zone Policy is unconstitutional, but have refused to eliminate this restrictive policy. *See e.g.* Letter attached as Exhibit 3; *see also See* Brad Polumbo, *UMass Policies Pose a Threat to Personal Liberty*, The Massachusetts Daily Collegian, Oct. 4, 2017, *available at* http://dailycollegian.com/2017/10/04/umass-policies-pose-a-threat-to-personal-liberty/.

## ALLEGATIONS OF LAW

87.     At all times relevant to this Complaint, each and all of the acts alleged herein were attributed to the Defendants who acted under color of a statute, regulation, custom, or usage of the Commonwealth of Massachusetts.

88.     Defendants knew or should have known that the Speech Zone Policy violates Plaintiffs' constitutional rights.

89.     Plaintiffs are suffering irreparable harm from Defendants' Speech Permit Policies.

90.     Plaintiffs have no adequate or speedy remedy at law to correct or redress the deprivation of their rights by Defendants.

91.     Unless the conduct of Defendants is enjoined, Plaintiffs will continue to suffer irreparable injury.

## FIRST CAUSE OF ACTION
### Violation of the Free Speech Clause of
### of the First Amendment to the United States Constitution

92.     Plaintiffs reallege all matters set forth in paragraphs 1-91 and incorporate them herein.

93.     Speech, including "speeches and rallies," is entitled to comprehensive protection under the First Amendment.

94.     The right to engage in speeches and to rally is an individual right possessed by Mr. Consolini in addition to being a corporate right possessed by YAL.

95.     First Amendment rights extend to campuses of public colleges.

96.     The sidewalks and open spaces of the College's campus are designated—if not traditional—public forums for speech and expressive activities by students enrolled at the College.

97.     A public university's ability to restrict speech—particularly student speech—in a public forum is limited.

98.     Under the First Amendment's Free Speech Clause, a prior restraint on citizens' expression is presumptively unconstitutional, unless it (1) does not delegate overly broad licensing discretion to a government official, (2) contains only content and viewpoint neutral reasonable time, place, and manner restrictions, (3) is narrowly tailored to serve a significant governmental interest, and (4) leaves open ample alternative means for communication.

99.     Defendants' Speech Zone Policy violates the First Amendment because it prohibits Plaintiffs from expressing themselves through a speech or rally except for during only one hour per day and in a small area of a large open campus.

100.     Defendants' Speech Zone Policy and reservation policy prohibits Mr. Consolini from reserving any other space for a speech or rally thus limiting any option to deliver a speech or rally other students to the speech zone and limited time allotted.

101.     Defendants' Speech Zone Policy violates the First Amendment because it grants unbridled discretion to unreasonably limit and punish speech outside the small location and time permitted if an administrator deems the expression to be a "speech or rally."

102.     Defendants' Speech Zone Policy violates the First Amendment because it is overbroad and is not a reasonable time, place, and manner restriction.

103.    Defendants' Speech Zone Policy violates the First Amendment because it is not narrowly tailored to serve any significant governmental interest.

104.    Defendants' Speech Zone Policy violates the First Amendment because it does not leave open ample alternative channels of communication.

105.    Limiting "speeches and rallies" to a small designated zone during one hour per day is not narrowly tailored to any legitimate interests.

106.    Granting Defendants discretion to define what a speech or rally is or is not, is not narrowly tailored to any legitimate interests.

107.    Defendants can satisfy any legitimate interests they may have without limiting all speeches and rallies to the single speech zone during only one hour per day.

108.    Defendants can satisfy any legitimate interests they may have without granting Defendants discretion to discriminate based on viewpoint and content by interpreting some expressive activity outside the prescribed speech zone to be prohibited "speeches and rallies" while permitting other expressive activities.

109.    On information and belief, the overbreadth and undefined nature of Defendants' Speech Zone Policy chills the speech of Plaintiffs who seek to engage in expression on campus.

110.    Defendants violated Plaintiffs' First Amendment right to freedom of speech by enacting the Speech Zone Policy.

111.    Defendants' Speech Zone Policy grants Defendants unbridled discretion to regulate speech based on content or viewpoint and is not narrowly tailored to a compelling state interest.

112.    By granting unbridled discretion to discriminate against speech based on its content or viewpoint, the Speech Zone Policy violates the First Amendment regardless of whether that discretion has ever been unconstitutionally applied in practice.

113.    Defendants' Speech Zone Policy provides no guidelines or standards to limit the discretion of College officials in deciding what constitutes speeches or rallies or class hours.

114.    The First Amendment's prohibition against content and viewpoint discrimination requires Defendants to provide adequate safeguards to protect against the improper exclusion, restriction, or relocation of student speech based on its content or viewpoint.

115.    Because Defendants have failed to establish neutral criteria governing the decision of when expression constitutes banned speeches and rallies (except for in the speech zone during one hour each day), there is a substantial risk that University officials will engage in content and viewpoint discrimination when addressing student speech.

116.    Defendants' Speech Zone Policy is content- and viewpoint-based regulation of speech in a designated—if not traditional—public forum.

117.    Defendants' Speech Zone Policy violates Plaintiffs' right to free speech as guaranteed by the First Amendment to the United States Constitution.

118.    Because of Defendants' actions, Plaintiffs have suffered, and continue to suffer irreparable harm.  Plaintiffs are entitled to an award of monetary damages and equitable relief.

119.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to a declaration that Defendants violated their First Amendment right to freedom of speech and an injunction against Defendants' Speech Zone Policy.  Additionally, Plaintiffs are entitled to damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

### SECOND CAUSE OF ACTION
**Violation of the Due Process Clause
of the Fourteenth Amendment to the United States Constitution**

120.     Plaintiffs reallege all matters set forth in paragraphs 1-91 and incorporate them

herein.

121.     The Fourteenth Amendment to the United States Constitution guarantees Plaintiffs

the right to due process of law and prohibits Defendants from promulgating and employing vague

standards that allow for content or viewpoint discrimination in Defendants' handling of Plaintiffs'

speech.

122.     The government may not regulate speech based on policies that permit arbitrary,

discriminatory, and overzealous enforcement.

123.     The government may not regulate speech based on policies that cause persons of

common intelligence to guess at their meaning and differ as to their application.

124.     The term "speeches" is undefined, vague, and ambiguous.

125.     The term "rallies" is undefined, vague, and ambiguous.

126.     The term "class hours" is undefined, vague and ambiguous.

127.     Because these terms are undefined, they permit arbitrary, discriminatory, and

overzealous enforcement.

128.     Defendants' Speech Permit Policies are impermissibly vague and ambiguous and

are thus incapable of providing meaningful guidance to Defendants because the terms "speeches

and rallies" and "class hours" are vague and undefined, providing no meaningful guidance either

to students or to administrators regarding whether expression is permitted outside the speech zone

and during hours other than noon to 1:00 pm, or whether expression is deemed to be a speech or

rally that is strictly prohibited during "class hours" other than noon to 1:00 pm outside the speech zone.

129.   Defendants' Speech Zone Policy prohibits a substantial amount of constitutionally protected speech in that it prohibits any "speeches and rallies" anywhere on campus during all "class hours" except in a very small location for one hour per day and provides no objective and exhaustive viewpoint and content neutral criteria to safeguard against abuse of the process to restrict disfavored speech in violation of Plaintiffs' right to due process of law under the Fourteenth Amendment.

130.   The lack of criteria, factors, or standards in Defendants' Speech Zone Policy renders the policy and practice unconstitutionally vague in violation of Plaintiffs' right to due process of law under the Fourteenth Amendment.

131.   The vagueness and uncertainty caused by Defendants' Speech Zone policy limits Plaintiffs' speech because in order to engage in expression outside the zone they must subject themselves to penalties, including and up to expulsion for violating the policy.

132.   Because of Defendants' actions, Plaintiffs have suffered, and continue to suffer irreparable harm.  They are entitled to an award of monetary damages and equitable relief.

133.   Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to a declaration that Defendants violated their Fourteenth Amendment right to due process of law and an injunction against Defendants' Speech Zone Policy.  Additionally, Plaintiffs are entitled to damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

## PRAYER FOR RELIEF

Therefore, Plaintiffs ask the Court to enter judgment against Defendants as follows:

1. That this Court issue a declaratory judgment that Defendants' Speech Zone Policy both facially and as-applied violates Plaintiffs' rights under the Free Speech Clause of the First Amendment as applied to the states via the Fourteenth Amendment;

2. That this Court issue a declaratory judgment that Defendants' Speech Zone Policy both facially and as-applied violates Plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment;

3. That this Court enter a preliminary and permanent injunction restraining all Defendants, their officers, agents, employees, and all other persons acting in concert with them, from enforcing or applying the Speech Zone Policy;

4. That this Court order Defendants sued in their individual capacities to pay nominal and actual damages in an amount to be determined at trial for the violation of Plaintiffs' First and Fourteenth Amendment rights;

5. That this Court issue the requested injunctive relief without a condition of bond or other security being required of Plaintiffs;

6. That this Court award Plaintiffs' costs and expenses, including their attorneys' fees, pursuant to 42 U.S.C. § 1988; and

7.  For such other relief as the Court deems just and equitable.

Verification of Complaint

I, Nicholas Consolini, on behalf of Young Americans for Liberty at Amherst and myself, verify under penalty of perjury that I have read the above complaint and its contents. I also verify that, to the best of my knowledge and recollection, the matters stated in the complaint are true and correct.

Executed this __5th__ day of January, 2018.

_Nicholas Consolini_

Nicholas Consolini, on behalf of myself and for
Young Americans for Liberty at Amherst

Respectfully submitted this 8th day of January, 2018:

/s/ Andrew D. Beckwith
Andrew D. Beckwith (MA BBO 657747)
MASSACHUSETTS FAMILY INSTITUTE
400 TradeCenter Suite 1950
Woburn, Massachusetts 01801
Tel: (781) 569-0400
andrew@mafamily.org

J. Caleb Dalton*
M. Casey Mattox*
ALLIANCE DEFENDING FREEDOM
440 1st St NW
Suite 600
Washington, DC 20001
Tel.:  202-393-8690
Fax:  202-347-3622
cdalton@ADFlegal.org
cmattox@ADFlegal.org

*Pro hac vice application to follow

Attorneys for Plaintiffs